# EXHIBIT A

# SETTLEMENT AND RELEASE AGREEMENT

**THIS SETTLEMENT AND RELEASE AGREEMENT** ("**Settlement Agreement**") is entered into as of the date on which this Settlement Agreement is executed by all Parties hereto (the "**Effective Date**"), by and between Margaret R. Westbrook as Receiver for LStar Management, LLC, a North Carolina limited liability company ("**Receiver**"), and Kyle V. Corkum, Sherry K. Corkum and Koftan Family Revocable Trust (collectively "**Corkum**"). Receiver and Corkum may be referred to herein individually as a "**Party**" and collectively as the "**Parties**."

## RECITALS

WHEREAS, LStar Management, LLC ("**Management**") and Corkum have been involved in ongoing litigation, and Management has filed certain claims (the "**LStar Claims**") against Corkum in *LStar Management, LLC and LStar Southfield, LLC v. Kyle V. Corkum*, Case No. 18-CVS-11636 (Wake County), which is currently stayed pending AAA Arbitration (the "**LStar Case**").

WHEREAS, Corkum has asserted or threatened to assert certain claims (the "**Corkum Claims**" and with the LStar Claims the "**Claims**") against Management, including as asserted in *Megan L. Mueller v. LStar Management, LLC and Kyle V. Corkum*, 18-CV-010309 (Wake County Superior Court); *SDBoston Real Estate General Partnership v. LStar Management Company, LLC*, 19-CVS-3536 (Wake County Superior Court); *Kyle Corkum and Sherry Corkum v. LS Southfield, LLC, LStar Southfield, LLC, LStar Management, LLC, Gerard Kavanaugh and Steven Vining*, 1884-CV-03409 (BLS2) (Suffolk County Superior Court, Massachusetts); *Sharp Street, LLC v. LSTAR Ventures, et al*, 1982-CV-00764 (Plymouth County Superior Court, Massachusetts); *Rosemary Traini, Trustee of Mosaic Lending Trust v. LSTAR Southfield, LStar Management, ENDVSPE and Steven Vining*, 1982-CV-0076 (Norfolk County Superior Court, Massachusetts) (collectively the "**Corkum Cases**" and with the LStar Case, the "**Cases**").

WHEREAS, Koftan Family Revocable Trust ("Trust") is the owner of a 14% economic interest in Management, and Kyle V. Corkum and Sherry K. Corkum are trustees of the Trust.

WHEREAS, Sherry K. Corkum is an owner of part of the membership interest of Lakewood Partners, LLC ("Lakewood"), as well as the Class A membership units of Fidelus Holding Company, LLC ("Fidelus"), and, as partial consideration of this Agreement, Sherry K. Corkum shall cause Fidelus to become the owner of a 65% membership interest of Lakewood and further cause Fidelus to issue Class B membership units in Fidelus to the Creditors (as defined below).

WHEREAS, to avoid the future costs, burdens, and distractions of litigation, the Parties have mutually agreed to resolve with finality all of their respective Claims in the Cases and to release and discharge any and all claims that any Party has asserted, could have asserted, or has threatened to assert, all pursuant and subject to, and in accordance with, the terms and conditions of this Settlement Agreement.

NOW, THEREFORE, in consideration of the representations, acknowledgments,

promises, recitals, mutual covenants, and terms and conditions contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1. <u>Binding Effect</u>. All parts of this Settlement Agreement are binding, enforceable, and incorporated herein by reference, including any recitals. This Settlement Agreement is effective on the date of its execution by all parties and upon approval of the United States District Court for the Eastern District of North Carolina (**"Effective Date"**).

2. <u>Affirmative Covenants</u>. In order to settle all of the Claims between the Parties, the Parties agree and acknowledge as follows:

    a. Not later than fourteen (14) business days after the Effective Date, each Party shall dismiss or cause to be dismissed, **<u>with prejudice</u>**, all of its Claims in each of the Cases, including, but not limited to, any and all appeals noticed or otherwise taken by that Party. Subject to the terms of this Settlement Agreement, any dismissal ultimately resulting from such filings shall be without prejudice to the Parties' rights, at any time thereafter, to assert against the other Parties any and all claims and defenses asserted in the Cases, including the Claims. Notwithstanding anything to the contrary contained herein, the Parties agree that any and all documents, testimony, and other discovery that has been produced in the Cases may be used by the Parties, to the maximum extent permitted by law, in any subsequent litigation involving the parties as if produced in the first instance in such subsequent litigation. Nothing herein shall be construed to require any Party to dismiss its Claims against any person or entity that is not a Party to this Agreement.

    b. The Parties agree and acknowledge that they shall timely execute and/or deliver, or cause to be executed and/or delivered, as applicable, all documents or materials requested by any other Party that are reasonably necessary to carry out or otherwise effectuate the terms and conditions of this Settlement Agreement. Further, the Parties agree to take, or cause to be taken, all actions, and to do, or cause to be done, and to assist and cooperate with the other Party in doing, all things reasonably necessary or reasonably advisable to perform or otherwise effectuate the transactions contemplated by this Agreement.

    c. Pending completion of the dismissals set forth in Section 2(a) of this Settlement Agreement, the Parties agree that they will take all actions reasonably necessary to stay, obtain extensions of time to act, or otherwise limit proceedings in the Cases, including any appeal of the Case, and each Party will take any actions reasonably necessary to facilitate the other Parties' efforts in obtaining such a stay, extension of time, or other limitation of proceedings to enable the Parties to finalize and consummate their obligations under this Settlement Agreement.

    d. Nothing in this Settlement Agreement is intended to, nor shall, operate as an extension of any applicable time limitations or statutes of limitation applicable to the Claims, including extending or in any way modifying the applicable time limitations on the re-filing of the Claims.

3. Assignment.

a. In exchange for the dismissal of the LStar Claims against Corkum, Corkum shall cause Fidelus Holding Co., LLC ("Fidelus") to issue a number of Class B units in Fidelus (the "Interests") to each of the Management creditors listed on the Creditor Roster attached hereto as **Exhibit A** (the "Creditors") in an amount equal to the dollar amount of such Creditor's Remaining Claim.

b. The Interests shall entitle the Creditors to payments directly from Fidelus when Fidelus makes distributions to its interest holders.

c. The Interests shall be considered automatically redeemed by Fidelus on a dollar for dollar basis with each distribution reducing the amount of the Creditor's Remaining Claim. Once a Creditor has received the entire amount of its Remaining Claim, either through distributions from Fidelus, the Receiver, or otherwise, then the Creditor's Remaining Claim shall be cancelled and deemed paid in full.

4. Compensation of Receiver/Conversion to a Liquidating Trust. Corkum expressly consents to any and all compensation Receiver asserts is owed or has been paid to Receiver or any costs or expenses paid by Receiver to maintain and maximize the assets of Management, its affiliates or subsidiaries or to otherwise pay routine costs and expenses of the entities, including without limitation any payments to professionals and agents retained by Receiver. Corkum expressly consents to any future motion and efforts made by Receiver to convert the receivership of Management into a Liquidating Trust (or to any other form or estate that Receiver may determine in Receiver's sole discretion) and expressly agrees that Receiver may move for or otherwise seek any such conversion at any time. Corkum further agrees that he shall not join in or otherwise support any objection raised by any third party to a motion or other efforts by Receiver to convert the receivership of Management. Corkum further agrees to any compensation requested or paid to the Liquidating Trustee or any costs or expenses paid by the Liquidating Trustee to maintain and maximize the Trust assets or to otherwise pay routine costs and expenses of the Trust, including without limitation any payments to professionals and agents retained by the Trustee.

5. Release. As of the Effective Date of this Settlement Agreement, each Party, for itself and on behalf of its successors, assigns, agents, representatives, and predecessors-in-interest, does hereby forever relieve, release, and discharge the other Party and its officers, employees, agents, successors, attorneys, heirs, affiliates, subsidiaries, and each such party's respective officers, directors, managers, representatives, employees, agents, shareholders, members, partners, insurers, contractors, attorneys, successors-in-interest, predecessors-in-interest, and assigns (collectively, the "**Releasees**"), from any and all rights, duties, claims, causes of action, debts, liabilities, demands, obligations, promises, acts, costs, expenses (including, but not limited to, attorneys' fees), counterclaims, agreements, promises, and affirmative defenses, whether known or unknown, suspected or unsuspected, asserted or unasserted, accrued or unaccrued, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, that were, could have been, or at any time ever could be, asserted through and until the Effective Date, including, without limitation, all such claims that either Party may have as an individual, class member, putative class members, partner (limited or general), guarantor, shareholder, officer, director, unit holder, or limited liability company member (the "**Released Claims**"). Each Party understands and agrees that this

Settlement Agreement fully and finally releases and forever resolves the Released Claims, including claims that may be unknown, unanticipated and/or unsuspected. Each Party expressly waives any right to assert hereafter that any claims were excluded from this Settlement Agreement through ignorance, oversight, error, or otherwise. Each Party agrees that this Paragraph constitutes a waiver of any statutory provision, right, or benefit of any state or territory of the United States or any jurisdiction, and any principle of common law, at law or in equity, that prohibits the waiver of unknown claims.

6. <u>Covenant Not to Sue.</u>

a. Subject to the terms of this Settlement Agreement, each Party covenants and warrants that it will not re-commence, maintain, or prosecute any action or suit at law or in equity against the other Party based on any of the Released Claims, or in any way intentionally aid in the commencement, maintenance, or prosecution of any action or suit at law or in equity against the other Party based on any of the Released Claims while this Settlement Agreement remains in effect.

b. This Settlement Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against any action, suit, claim, investigation, review or other judicial or administrative proceeding, at law or in equity, before or by any governmental body or arbitrator that may be instituted, prosecuted, or attempted in breach of this Settlement Agreement, including, but not limited to, any claim that is released in this Settlement Agreement. This Settlement Agreement does not constitute and shall not be construed to waive each Party's right to recover damages for breach of this Settlement Agreement or to seek injunctive relief with respect to any breach or threatened breach by any other Party of this Settlement Agreement.

7. <u>Corkum Defaults</u>. Each of the following events shall constitute an Event of Default by Corkum under the terms of this Settlement Agreement (each a "Corkum Event of Default"):

a. Corkum fails to comply with any of his obligations under this Settlement Agreement and Corkum's failure continues for twenty (20) business days after Corkum's receipt of written notice of his failure. However, if Corkum reasonably undertakes action to cure an event of default and it is a cure cannot be reasonably effectuated within twenty (20) business days, Corkum shall have an additional twenty (20) days to effectuate a cure.

b. Corkum re-files any of the Corkum Claims or brings any new claim against Management or any Management subsidiary while this Settlement Agreement remains in effect.

c. Corkum directly or indirectly receives funds from, on behalf of, or owed to the Creditors and fails to transfer or cause the funds to be transferred to the Creditors within ten (10) days of Corkum's receipt of the funds.

d. Corkum misappropriates or diverts funds, assets, resources, corporate opportunities or any other tangible or intangible asset from Fidelus or causes Fidelus to forego any distribution or other transaction that otherwise would have resulted in the Creditors receiving funds pursuant to Section 3 of this Settlement Agreement.

8. <u>Receiver Defaults</u>. Each of the following events shall constitute an Event of Default by Receiver under the terms of this Settlement Agreement (each a "Receiver Event of Default"):

a. Receiver fails to comply with any of Receiver's obligations under this Settlement Agreement and the failure continues for ten (10) days after Receiver's receipt of written notice of that failure.

b. Receiver re-files the LStar Claims against Corkum while this Settlement Agreement remains in effect.

9. <u>Receiver's Remedies for any Corkum Event of Default</u>. The following remedies are not exclusive of one another but rather are each available to Receiver should a Corkum Event of Default occur:

a. In conjunction with the execution of this Agreement, Kyle. V. Corkum shall execute and deliver to Receiver the Confession of Judgment attached hereto as **Exhibit B** and incorporated herein by reference, in the amount of $1,000,000.00 (the "Corkum Confession of Judgment"). The Corkum Confession of Judgment shall be held by Receiver or counsel for Receiver and not filed unless Corkum defaults under or otherwise breaches this Settlement Agreement, including any Corkum Event of Default set forth herein. Upon any default, Corkum Event of Default, or breach by Corkum, Receiver may immediately enter, file, or otherwise effectuate the Corkum Confession of Judgment in any and all jurisdictions Receiver deems appropriate. Upon the full and final completion of all obligations under this Settlement Agreement but not later than the payment in full of all amounts necessary to pay all claims against the receivership estate that are accepted and approved by Receiver, and provided that Corkum has not defaulted under or breached this Settlement Agreement, Receiver will - upon written request from Corkum or his counsel - mark the Corkum Confession of Judgment, or a copy thereof, as cancelled or otherwise satisfied and return it to Corkum or counsel for Corkum. Corkum or his counsel shall also be entitled to the cancellation of the Corkum Confession of Judgment after five (5) years have passed since the Court's approval of this settlement agreement, even if payment in full of all amounts necessary to pay all claims against the receivership estate that are accepted and approved by Receiver has not occurred.

10. <u>Corkum's Remedy for any Receiver Event of Default</u>. Except as set forth herein, in the event Receiver breaches any term of this Settlement agreement, Corkum may pursue all rights, remedies, and claims available to Corkum under the Settlement Agreement, under applicable law, or in equity.

11. <u>Representations and Warranties</u>. Each Party represents, warrants, and agrees that:

a. The person signing this document on his, her, or its behalf is duly authorized to enter into this Settlement Agreement, and his or her signature is binding upon that Party;

b. The Party has carefully read this Settlement Agreement after consultation with its respective attorneys or advisors to the extent it deems appropriate, and the contents of the Agreement are known to and understood by the Party.

c. The Party has carefully read and reviewed the Settlement Agreement after

consultation with its respective attorneys or advisors to the extent it deems appropriate, and the Party knows, understands, and agrees to the contents of the Settlement Agreement;

  d. The Party is executing, or causing to be executed, this Settlement Agreement on an informed basis;

  e. The Party has entered into this Settlement Agreement and executed and delivered all documents in connection herewith of the Party's own free will and accord and without threat, duress or other coercion of any kind; and

  f. This Settlement Agreement is binding and enforceable in accordance with its terms.

12. <u>Notices</u>. Notices under this Settlement Agreement shall be considered given when delivered via First Class U.S. Mail as follows:

  To Receiver and Management:

  Margaret R. Westbrook
  Receiver for LStar Management, LLC
  K&L Gates LLP
  4350 Lassiter at North Hills, Suite 300
  Raleigh, NC 27619

  To Kyle Corkum:

  Donald G. Hunt, Jr.
  Attorney for Kyle Corkum, Sherry Corkum and Koftan Family Revocable Trust
  Akins Hunt Atkins, PC
  570 New Waverly Place, Suite 240
  Cary, NC 27518

13. <u>No Admission of Liability</u>. Neither this Settlement Agreement, nor any statement herein, nor any action or payment taken or made pursuant to this Settlement Agreement is an admission of liability, but rather, is made in order to settle the Claims and Cases described herein.

14. <u>No Waiver of Obligations Under This Agreement</u>. Nothing contained herein shall be construed to release or discharge any obligation of any Party to this Settlement Agreement arising under this Settlement Agreement.

15. <u>No Assignment of Released Claims.</u>

  a. Corkum represents, warrants, and agrees that, as of the Effective Date, he has not made any assignment, nor will he make any assignment, of any claim, right of action, or any right of any kind whatsoever of the Corkum Claims, and that no other person or entity of any kind had or has any interest in any of the Corkum Claims.

  b. Receiver represents, warrants, and agrees that, as of the Effective Date, Receiver has not made any assignment, nor will Receiver make any assignment, of any claim, right of action,

or any right of any kind whatsoever of the LStar Claims, and that no other person or entity of any kind had or has any interest in any of the LStar Claims.

16. <u>Costs and Attorneys' Fees</u>. Notwithstanding any other provision of this Settlement Agreement, the Parties acknowledge and agree that they shall bear their own costs and attorneys' fees, including, but not limited to, all expenses and attorneys' fees and filing fees incurred in connection with the Claims and this Settlement Agreement.

17. <u>Predecessors, Successors, Assigns, and Beneficiaries</u>. This Settlement Agreement shall inure to the benefit of and shall bind the successors, assigns, heirs, and beneficiaries of the Parties, and each of them. This Settlement Agreement has been entered into between the Parties solely for the purpose of giving effect to the agreements herein provided between and for the exclusive benefit of Receiver and Corkum, and no other person or entity will have or acquire any rights, benefits, claims, or remedies on account of this Settlement Agreement or any of the matters provided for herein unless otherwise set forth herein. No Party may assign, transfer, novate, or otherwise alienate any of its rights or obligations under this Settlement Agreement (including any rights to payment) without the prior written consent of the other Parties.

18. <u>Choice of Law and Forum</u>. This Settlement Agreement shall be governed by and interpreted in accordance with the laws of the State of North Carolina as they are applied to contracts made and to be wholly performed in this State, without regard to any choice of law rules to the contrary. Any action, suit, or other claim instituted to enforce this Settlement Agreement shall be brought in a state or federal court of jurisdiction in the State of North Carolina.

19. <u>Merger and Integration</u>. This Settlement Agreement constitutes a single, integrated contract expressing the entire agreement of the Parties relative to the terms set forth herein. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party with respect to the terms of this Settlement Agreement, except as specifically set forth in this Settlement Agreement. All prior discussions and negotiations with respect to the terms of this settlement have been and are merged and integrated into, and are superseded by, the Settlement Agreement and the documents executed in connection herewith.

20. <u>Amendment; Non-Waiver</u>. This Settlement Agreement shall not be amended or modified except by a written amendment signed by each of the Parties, which writing expressly states that it is intended to be an amendment to or modification of this Settlement Agreement. No other writing, irrespective of its content, and no course of conduct will act as an amendment or modification of this Settlement Agreement. Any waiver by a Party of its rights hereunder shall be effective only if in writing, and no waiver shall be implied by a party's action(s) or inaction(s). No failure or delay on the part of any Party in the exercise of any right or privilege hereunder shall operate as a waiver thereof or of the exercise of any other right or privilege hereunder, nor shall any single or partial exercise of any such right or privilege preclude other or further exercise thereof or of any other right or privilege.

21. <u>Severability</u>. In the event that any provision of this Settlement Agreement should be held to be void, voidable, or unenforceable in a particular instance and such provision does not affect the basis of the bargain of the Parties hereunder, such provision shall be severed in such instance, and the remaining portions hereof shall remain in full force and effect. Furthermore, in

lieu of such severed provision, there shall be added automatically in any such instance as a part of this Settlement Agreement, a provision as similar to the severed provision as may be possible and be legal, binding, and enforceable.

      22.    <u>Multiple Counterparts</u>. This Settlement Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which constitute one and the same agreement. The signature pages from any counterpart may be appended to any other counterpart to assemble fully executed counterparts. Counterparts of this Settlement Agreement also may be exchanged via electronic mail or facsimile, and an electronic, photocopied, or .pdf version of any Party's authorized signature shall be deemed to be an original signature for all purposes.

      23.    <u>Interpretation and Construction</u>. This Settlement Agreement has been, and shall be deemed to have been, jointly drafted by the Parties, and no provision of this Settlement Agreement is to be interpreted for or against any Party because that Party or its legal representative drafted (or did not draft) such provision, as the Parties agree that they each contributed substantially to the drafting of this Settlement Agreement.

[SIGNATURES FOLLOW]

IN WITNESS WHEREOF, this Settlement Agreement is executed and delivered under seal this the _____ day of _____, 2021, effective as of the Effective Date.

**Margaret R. Westbrook**
Court Appointed Receiver for LStar Management, LLC

By: _____

Name: _____

Position: _____

STATE OF NORTH CAROLINA

COUNTY OF WAKE

I certify that the following person personally appeared before me this day and acknowledged to me that he voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: _____.

Date: _____, 2021.

My Commission Expires:

_____                  _____
                                                              Notary Public

Print Name:_____

[Affix Notary Stamp or Seal]

IN WITNESS WHEREOF, this Agreement is executed and delivered under seal this the _____ day of _____, 2021, effective as of the Effective Date.

**Kyle V. Corkum**

Name:_____

STATE OF NORTH CAROLINA

COUNTY OF WAKE

I certify that the following person personally appeared before me this day and acknowledged to me that he voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: _____.

Date: _____, 2021.

My Commission Expires:

_____

_____
Notary Public

Print Name:_____

[Affix Notary Stamp or Seal]

IN WITNESS WHEREOF, this Agreement is executed and delivered under seal this the ___ day of _____, 2021, effective as of the Effective Date.

**Sherry K. Corkum**

Name:_____

STATE OF NORTH CAROLINA

COUNTY OF WAKE

I certify that the following person personally appeared before me this day and acknowledged to me that he voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: _____.

Date: _____, 2021.

My Commission Expires:

_____

_____
Notary Public

Print Name:_____

[Affix Notary Stamp or Seal]

      IN WITNESS WHEREOF, this Agreement is executed and delivered under seal this the ___ day of _____, 2021, effective as of the Effective Date.

**Koftan Family Revocable Trust**

Name:_____
      Sherry K. Corkum, Trustee


Name:_____
      Kyle V. Corkum, Trustee


STATE OF NORTH CAROLINA

COUNTY OF WAKE

I certify that the following persons personally appeared before me this day and acknowledged to me that she and he voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: _____.

Date: _____, 2021.

My Commission Expires:

_____                   _____
                                                                   Notary Public

                                                                   Print Name:_____

# EXHIBIT A

| Title | Amount of Allowed Claim | Percentage of Total Claims | Initial Distribution Amount | Remaining Claim |
|---|---|---|---|---|
| **Recognized Creditor Claims** | | | $1,000,000 | |
| Fortitude Financial Investments Judgment 1 | $7,800,088.11 | # | $371,987.00 | $7,428,101.11 |
| SD Boston Real Estate General Partnership | $697,850.00 | # | $33,280.54 | $664,569.46 |
| MFA | $81,750.00 | # | $3,898.67 | $77,851.33 |
| Mid-Atlantic Capital, LLC | $2,112,500.00 | # | $100,745.34 | $2,011,754.66 |
| Sean McColl | $597,333.00 | # | $28,486.87 | $568,846.13 |
| Michael Trout | $300,000.00 | # | $14,307.03 | $285,692.97 |
| Shanahan Law Fees | $111,621.85 | # | $5,323.26 | $106,298.59 |
| 63 Nichols, LLC | $2,300,000.00 | # | $109,687.23 | $2,190,312.77 |
| Drew and William Spransy (each 50%) | $311,668.07 | # | $14,863.48 | $296,804.59 |
| Paul Flick (Mediator) | $850.00 | # | $40.54 | $809.46 |
| Landquest Legacy | $627,000.00 | # | $29,901.69 | $597,098.31 |
| Sean McColl | $244,267.75 | # | $11,649.15 | $232,618.60 |
| LStar Grande Dunes I, LLC | $1,157,813.00 | # | $55,216.22 | $1,102,596.78 |
| LStar Grande Dunes II, LLC | $423,958.00 | # | $20,218.60 | $403,739.40 |
| Paul Lyford | $226,187.00 | # | $10,786.88 | $215,400.12 |
| Michael Trout | $412,500.00 | # | $19,672.17 | $392,827.83 |
| Paul Lyford | $26,187.00 | # | $1,248.86 | $24,938.14 |
| Michael Trout | $3,238.00 | # | $154.42 | $3,083.58 |
| Talonwater, LP | $1,572,000.00 | # | $74,968.84 | $1,497,031.16 |
| Maverick Acquisitions, LLC | $393,000.00 | # | $18,742.21 | $374,257.79 |
| Michael Mills | $30,000.00 | # | $1,430.70 | $28,569.30 |
| Anthony Bruster | $47,768.67 | # | $2,278.09 | $45,490.58 |
| Cross Living Trust (1) | $47,770.67 | # | $2,278.19 | $45,492.48 |
| Cross Living Trust (2) | $48,531.00 | # | $2,314.45 | $46,216.55 |
| Santosh Gandhari | $38,825.00 | # | $1,851.57 | $36,973.43 |
| John Cannon Green | $23,883.34 | # | $1,139.00 | $22,744.34 |
| Hafer Family Trust | $47,796.67 | # | $2,279.43 | $45,517.24 |
| Kelly O'Bannon | $23,883.34 | # | $1,139.00 | $22,744.34 |
| Michael Rowan | $47,769.67 | # | $2,278.14 | $45,491.53 |
| George Walters | $48,531.00 | # | $2,314.45 | $46,216.55 |
| Wyatt Webb | $47,769.67 | # | $2,278.14 | $45,491.53 |
| Dr. Felix Vasquez | $15,189.50 | # | $724.39 | $14,465.11 |
| Michael Mills | $15,189.50 | # | $724.39 | $14,465.11 |
| Michael Mills | $30,000.00 | # | $1,430.70 | $28,569.30 |
| Michael Trout | $45,603.00 | # | $2,174.81 | $43,428.19 |
| John Dumbleton | $58,033.00 | # | $2,767.60 | $55,265.40 |
| Trevor Gruenewald | $76,803.00 | # | $3,662.74 | $73,140.26 |
| Neil Hafer | $102,404.00 | # | $4,883.66 | $97,520.34 |
| Larry and Barbara Hill | $102,404.00 | # | $4,883.66 | $97,520.34 |
| Kurt Lasher | $102,404.00 | # | $4,883.66 | $97,520.34 |
| Charles Meeks | $56,323.00 | # | $2,686.05 | $53,636.95 |
| Michael Rowan | $51,202.00 | # | $2,441.83 | $48,760.17 |
| Mike Traw | $51,202.00 | # | $2,441.83 | $48,760.17 |
| Dumbleton Trust | $51,202.00 | # | $2,441.83 | $48,760.17 |
| George Walters (BNA Ventures LTD) | $102,404.00 | # | $4,883.66 | $97,520.34 |
| Charles Derrick White | $256,008.00 | # | $12,209.05 | $243,798.95 |
| | **$20,968,711.81** | **100.00%** | **$1,000,000.00** | **$19,968,711.81** |
| | | | | $19,968,711.81 |

# EXHIBIT B

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE SUPERIOR COURT DIVISION |
|---|---|
| WAKE COUNTY | CONFESSION OF JUDGMENT |

Kyle Corkum ("Corkum") hereby confesses judgment (the "Confession of Judgment") in favor of LStar Management, LLC ("Management"), including any Receiver and receivership estate for Management, pursuant to Rule 68.1 of the North Carolina Rules of Civil Procedure, and in support of this Confession of Judgment, states to the Court as follows:

1. Management is a duly formed limited liability company with its principal place of business and, thus, its residence in Wake County North Carolina.

2. Management is authorized and has the capacity to sue and be sued in the State of North Carolina.

3. Management is currently subject to a receivership imposed by the United States District Court for the Eastern District of North Carolina, with Margaret R. Westbrook, Esq. acting as court-appointed receiver for Management ("Receiver").

4. Corkum is a citizen of North Carolina residing in Wake County, North Carolina.

5. Management asserted several claims against Corkum in *LStar Management, LLC and LStar Southfield, LLC v. Kyle V. Corkum*, Case No. 18-CVS-11636 (Wake County) seeking monetary damages (the "LStar Claims").

6. Corkum has asserted or threatened to assert certain claims (the "Corkum Claims" and with the LStar Claims the "Claims") against Management, including as asserted in *Megan L. Mueller v. LStar Management, LLC and Kyle V. Corkum*, 18-CV-010309 (Wake County Superior Court); *SDBoston Real Estate General Partnership v. LStar Management Company, LLC*, 19-CVS-3536 (Wake County Superior Court); *Kyle Corkum and Sherry Corkum v. LS*

*Southfield, LLC, LStar Southfield, LLC, LStar Management, LLC, Gerard Kavanaugh and Steven Vining*, 1884-CV-03409 (BLS2) (Suffolk County Superior Court, Massachusetts); *Sharp Street, LLC v. LSTAR Ventures, et al*, 1982-CV-00764 (Plymouth County Superior Court, Massachusetts); *Rosemary Traini, Trustee of Mosaic Lending Trust v. LSTAR Southfield, LStar Management, ENDVSPE and Steven Vining*, 1982-CV-0076 (Norfolk County Superior Court, Massachusetts).

7. Corkum and Management have resolved the Claims and will execute and abide by all terms of a Settlement Agreement (the "Agreement") to be entered into concurrently with the signing of this Confession of Judgment.

8. Pursuant to the terms of the Agreement, Corkum and Management have agreed that, in exchange for the dismissal of the LStar Claims, Corkum shall dismiss the Corkum Claims and Sherry Corkum shall cause Fidelus Holding Co., LLC to issue a number of Class B units in Fidelus to certain Management creditors.

9. To secure Corkum's obligations under the Agreement, Corkum has executed and authorized this Confession of Judgment, which shall be held by Receiver or counsel for Receiver (or, if the Receiver is discharged, then by Management or its counsel) and which may be filed or otherwise docketed immediately and without further notice by or on behalf of Receiver (or, if the Receiver is discharged, Management) in the event of any breach of or failure to comply with the terms of the Agreement by Corkum or as otherwise set forth in the Agreement, including, but not limited to, by failure to timely and fully make any payments required thereunder.

10. Corkum and Receiver have agreed that the confessed amount of $1,000,000.00 will partially satisfy the likely damages to the Receivership estate and its creditors should Corkum default under or otherwise breach the Agreement.

11. Accordingly, Corkum hereby confesses judgment and authorizes the entry of judgment in favor of Management (and its receivership estate) in the amount of **$1,000,000.00** plus post-judgment interest at the legal rate thereafter until satisfied in full (the "Confessed Amount"), representing amounts due and owing to Management and its receivership estate.

12. Corkum's obligations under the Agreement, and the Confessed Amount, are currently outstanding.

13. Should Receiver file or otherwise docket the Confession of Judgment in any jurisdiction, Corkum expressly acknowledges that nothing in the Agreement or this Confession of Judgment will limit Receiver from pursuing any rights, remedies, or claims available to it under the Agreement and/or applicable law, nor shall the Confessed Amount limit Receiver's entitlement to recover all amounts to which it is otherwise entitled under applicable law. This Confession of Judgment shall not be construed to limit Corkum's obligations under the Agreement, including, but not limited to, their obligation to timely and fully make all payments due and owing to Receiver's creditors. This Confession of Judgment also shall not operate as res judicata or otherwise under any theory or application of law or equity to bar any claim arising against Corkum.

Corkum, being first duly sworn, deposes and says:

That Corkum has read the foregoing Confession of Judgment, that Corkum has been represented by counsel of his choosing in executing this Confession of Judgment or has had the reasonable opportunity to retain counsel and has voluntarily and knowingly elected not to do so, that all matters contained therein are true and correct to the best of Corkum's knowledge, and that Corkum authorizes entry of a judgment against Corkum for the amounts stated herein.

This the _____ day of _____, 2021.

[Signature Pages Follow]

_____
**KYLE V. CORKUM**


STATE OF _____

COUNTY OF _____

      I certify that the following person personally appeared before me this day and acknowledged to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated:  <u>Kyle V. Corkum.</u>

Date:  _____

My Commission Expires:

_____

[Affix Notary Stamp or Seal]

                                             _____
                                                          Notary Public
                                             Print Name: _____