# EXHIBIT C

# SHARING AND RELEASE AGREEMENT

**THIS SHARING AND RELEASE AGREEMENT** ("**Agreement**") is entered into by and between Margaret R. Westbrook as Receiver for LStar Management, LLC, a North Carolina limited liability company (**"Receiver"**), and _____ (**"Creditor"**). Receiver and Creditor may be referred to herein individually as a "**Party**" and collectively as the "**Parties**."

## RECITALS

WHEREAS, Fortitude Financial Investments, Inc. ("**Judgment Creditor**") obtained a judgment ("Judgment") against LStar Management, LLC ("LStar") in the United Stated District Court for the Southern District of New York and subsequently transferred the Judgment to the United States District Court for the Eastern District of North Carolina (the "Court"), Case No. 19-m-00028-D.

WHEREAS, Judgment Creditor petitioned the Court for the appointment of a receiver to take control of LStar for the purposes of liquidating the assets of LStar for the benefit of Judgment Creditor. The Court granted Judgment Creditor's motion and appointed Margaret R. Westbrook as Receiver, as set forth in the Order Granting Motion for Appointment of Receiver (Dkt. 9) entered by the Court on March 11, 2020 (the "Receivership Order").

WHEREAS, the Receiver, through LStar and by the powers granted by Receiver in various orders entered by the Court, has ownership rights, management authority and control over the various corporate entities listed on Exhibit A attached hereto (the "LStar Entities");

WHEREAS, Creditor holds a claim(s) (the "Claim") against one or more LStar Entities in the amount reflected in the spreadsheet (the "Creditor Roster") attached hereto as Exhibit B;

WHEREAS, Receiver desires to equitably distribute the limited assets of the LStar Entities to the LStar Entities' creditors, including Creditor;

WHEREAS, pursuant to the Receivership Order, Receiver desires to secure and distribute to Creditor additional recoveries from non-LStar Entities' assets, including business profits generated through Fidelus Holding Co., LLC ("Fidelus");

WHEREAS, Creditor hereby acknowledges, accepts, and agrees that the Claim listed on the Creditor Roster is the full and complete amount owed to Creditor by the LStar Entities and accepted and acknowledged by Receiver in order to calculate the proposed interim payment to Creditor (the "Interim Payment"); and

WHEREAS, in exchange for the Interim Payment on its Claim and Creditor's receipt of an interest in Fidelus, Creditor agrees to release certain claims, rights, and interests and to accept distributions from the Receiver as calculated pursuant to the Creditor Roster and distributions for which it may be entitled as a holder of an interest in Fidelus.

NOW, THEREFORE, in consideration of the representations, acknowledgments, promises, recitals, mutual covenants, and terms and conditions contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged,

the Parties agree as follows:

## **AGREEMENT**

1. <u>Binding Effect</u>. All parts of this Agreement are binding, enforceable, and incorporated herein by reference, including any recitals. This Agreement shall be effective on the first business day after the execution by Creditor and Receiver and after entry of a final order entered by the Court authorizing the Receiver to enter into this Agreement (**"Effective Date"**).

2. <u>Allowance and Payment of the Claim</u>. The Parties acknowledge and agree as follows:

    a. Creditor's Claim reflected on the Creditor Roster is the full and final amount of its allowed claim against any of the LStar Entities.

    b. In satisfaction of the Claim, the Receiver shall pay and Creditor shall receive an Interim Payment as reflected on the Creditor Roster and such other further distributions as may be made available to Creditor during the course of the Receivership.

    c. Also in satisfaction of the Claim, after the Interim Payment, Creditor shall hold the Remaining Claim as listed on the Creditor Roster. The Creditor shall be assigned a number of Class B units in Fidelus equal to the dollar amount of the Remaining Claim (the "Class B Interest"), rounded downward to the nearest dollar, which Class B Interest shall continue until paid in accordance with the terms of the Operating Agreement of Fidelus.

    d. Creditor's Remaining Claim shall be reduced on a dollar-for-dollar basis by any and all distributions from Fidelus and any and all distributions from the Receiver after the Interim Payment.

    e. Creditor releases and relinquishes all claims, rights, economic interests or other rights and remedies, if any, to any other distributions or payments from any and all LStar Entities, and their officers, directors, employees, or guarantors.

    f. Receiver and Judgment Creditor are entitled to compensation and reimbursement for their services on behalf of the Receivership Estate.

    g. Receiver and Judgment Creditor are entitled to and have paid the costs and expenses associated with the Judgment, the appointment of Receiver, and the Receivership Estate as reflected on <u>Exhibit C.</u>

    h. Receiver intends to pay additional costs and expenses of the Receivership Estate in the amounts and for the services reflected on <u>Exhibit D</u>.

    i. Receiver is further entitled to hold in reserve certain amounts determined necessary in Receiver's reasonable discretion to pay for the future costs and expenses of the Receivership Estate.

3. <u>No Warranties or Representations</u>. Receiver makes no warranties or representations regarding Fidelus, its assets, liabilities, financial condition, or potential for

Page **2** of **9**

Case 5:19-mc-00028-D   Document 48-3   Filed 11/12/21   Page 3 of 10

recovery or distributions. Receiver does not guarantee or warrant that any distributions will be made by or on behalf of Fidelus or otherwise to Creditor. All due diligence related to Fidelus shall be the sole responsibility of Creditor and its own counsel and financial advisors. The failure of Fidelus to make any such distribution or of Creditor to receive any funds, amounts, or assets of any kind as a result of its Interest shall not constitute or otherwise be deemed a breach of this Agreement or a failure of consideration for this Agreement.

    4.    <u>Release</u>. As of the Effective Date of this Settlement Agreement, other than the Remaining Claim listed on the Creditor Roster, Creditor, for itself and on behalf of its successors, assigns, agents, representatives, and predecessors-in-interest, does hereby forever relieve, release and forego (a) any rights, ownership interests and economic interests held in or claims against the Receiver, the Judgment Creditor, LStar Development Group, Inc., Landquest Legacy of North Carolina, LLC, the LStar Entities and any of their respective former and current officers, directors, managers, employees, agents, successors, attorneys, heirs, affiliates, subsidiaries, and each such party's respective officers, directors, managers, representatives, employees, agents, shareholders, members, partners, guarantors, insurers, contractors, attorneys, agents, successors-in-interest, predecessors-in-interest, and assigns (collectively, the "**Released Parties**"), and (b) any and all rights, duties, claims, causes of action, debts, liabilities, demands, obligations, promises, acts, costs, expenses (including, but not limited to, attorneys' fees), counterclaims, agreements, promises, and affirmative defenses arising from or relating to the Released Parties ("**Released Matters**"), whether known or unknown, suspected or unsuspected, asserted or unasserted, accrued or unaccrued, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, that were, could have been, or at any time ever could be, asserted through and until the Effective Date, including, without limitation, all such claims that Creditor may have as an individual, class member, putative class member, partner (limited or general), guarantor, shareholder, officer, director, unit holder, or limited liability company member (collectively with the Released Matters, the "**Released Claims**"). For the avoidance of doubt, upon receipt of the full amount of the Remaining Claim, through any combination of Interim Payment, distributions from the Class B Interests, or additional distributions from the Receiver, Creditor hereby acknowledges the release of its Remaining Claim against the Receivership Estate and the Released Parties.

Creditor understands and agrees that this Agreement fully and finally releases and forever resolves the Released Claims, including claims that may be unknown, unanticipated and/or unsuspected. Creditor expressly waives any right to assert hereafter that any claims were excluded from this Agreement through ignorance, oversight, error, or otherwise. Creditor agrees that this Paragraph constitutes a waiver of any statutory provision, right, or benefit of any state or territory of the United States or any jurisdiction, and any principle of common law, at law or in equity, that prohibits the waiver of unknown claims.

Furthermore, Creditor waives the above described rights against the LStar Entities under California Civil Code Section 1542, which reads as follows:

**"<u>A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF</u>**

**KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

    5.    <u>Covenant Not to Sue</u>

    a.  Subject to the terms of this Agreement, Creditor covenants and warrants that it will not commence, maintain, or prosecute any action or suit at law or in equity against the Released Parties based on any of the Remaining or Released Claims, or in any way intentionally aid in the commencement, maintenance, or prosecution of any action or suit at law or in equity against the Released Parties.

    b.  This Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against any action, suit, claim, investigation, review or other judicial or administrative proceeding, at law or in equity, before or by any governmental body or arbitrator that may be instituted, prosecuted, or attempted in breach of this Agreement, including, but not limited to, any claim that is released in this Agreement. This Agreement does not constitute and shall not be construed to waive each Party's right to recover damages for breach of this Agreement or to seek injunctive relief with respect to any breach or threatened breach by any other Party to this Agreement.

    6.    <u>Creditor Defaults</u>. If Creditor fails to comply with any of its obligations under this Agreement, and Creditor's failure continues for ten (10) days after Creditor's receipt of written notice of its failure, then Creditor shall be in default under this Agreement, and its failure to comply shall constitute an "Event of Default." Upon the occurrence of an Event of Default, Creditor waives and forfeits its rights to its Remaining Claim, its Class B Interest, and any other distributions from the Receiver or otherwise. Notwithstanding the foregoing, the Released Parties shall continue to hold all rights and benefits they have obtained under this Agreement and have any and all rights and remedies in law or equity under state and federal law against the Creditor arising from or relating to Creditor's non-compliance.

    7.    <u>Representations and Warranties</u>. Each Party represents, warrants, and agrees that:

    a.  The person signing this document on his, her, or its behalf is duly authorized to enter into this Agreement, and his or her signature is binding upon that Party;

    b.  The Party has carefully read this Agreement after consultation with its respective attorneys or advisors to the extent it deems appropriate, and the contents of the Agreement are known to and understood by the Party;

c. The Party is executing, or causing to be executed, this Agreement on an informed basis;

d. The Party has entered into this Agreement and executed and delivered all documents in connection herewith of the Party's own free will and accord and without threat, duress or other coercion of any kind; and

e. This Settlement Agreement is binding and enforceable in accordance with its terms.

8. <u>Notices</u>. Notices under this Settlement Agreement shall be considered given when delivered via First Class U.S. Mail as follows:

To Receiver and the LStar Entities:

Margaret R. Westbrook
Receiver for LStar Management, LLC
K&L Gates LLP
4350 Lassiter at North Hills, Suite 300
Raleigh, NC 27619

To Creditor:

9. <u>No Admission of Liability</u>. Neither this Agreement, nor any statement herein, nor any action or payment taken or made pursuant to this Agreement is an admission of liability.

10. <u>No Waiver of Obligations Under This Agreement</u>. Nothing contained herein shall be construed to release or discharge any obligation of any Party arising under this Agreement.

11. <u>No Assignment of Released Claims</u>. Creditor represents, warrants, and agrees that, as of the Effective Date, it has not made any assignment, nor will it make any assignment, of any claim, right of action, or any right of any kind whatsoever of the Released or Remaining Claims without the Receiver's written consent, and that no other person or entity of any kind had or has any interest in any of the Released or Remaining Claims.

12. <u>Costs and Attorneys' Fees</u>. Notwithstanding any other provision of this Agreement, the Parties acknowledge and agree that Creditor shall bear its own costs and attorneys' fees, including, but not limited to, all expenses and attorneys' fees and filing fees incurred in connection with the Released Claims and this Agreement.

13. <u>Predecessors, Successors, Assigns, and Beneficiaries</u>. This Agreement shall inure to the benefit of and shall bind the successors, assigns, heirs, and beneficiaries of the Parties, and each of them. This Agreement has been entered into between the Parties solely for the purpose of giving effect to the agreements herein provided between and for the exclusive benefit of Receiver

and Creditor, and no other person or entity will have or acquire any rights, benefits, claims, or remedies on account of this Agreement or any of the matters provided for herein unless otherwise set forth herein. No Party may assign, transfer, novate, or otherwise alienate any of its rights or obligations under this Agreement (including any rights to payment) without the prior written consent of the other Parties.

14. <u>Choice of Law and Forum</u>. This Agreement shall be governed by and interpreted in accordance with the laws of the State of North Carolina as they are applied to contracts made and to be wholly performed in this State, without regard to any choice of law rules to the contrary. Any action, suit, or other claim instituted to enforce this Agreement shall be brought in a federal court of jurisdiction in the Eastern District of North Carolina and, if jurisdiction cannot be obtained in the Eastern District of North Carolina, the Superior Court for Wake County, North Carolina.

15. <u>Merger and Integration</u>. This Agreement constitutes a single, integrated contract expressing the entire agreement of the Parties relative to the terms set forth herein. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party with respect to the terms of this Agreement, except as specifically set forth in this Agreement. All prior discussions and negotiations with respect to the terms of this settlement have been and are merged and integrated into, and are superseded by, the Agreement and the documents executed in connection herewith.

16. <u>Amendment; Non-Waiver</u>. This Agreement shall not be amended or modified except by a written amendment signed by each of the Parties, which writing expressly states that it is intended to be an amendment to or modification of this Agreement. No other writing, irrespective of its content, and no course of conduct will act as an amendment or modification of this Agreement. Any waiver by a Party of its rights hereunder shall be effective only if in writing, and no waiver shall be implied by a party's action(s) or inaction(s). No failure or delay on the part of any Party in the exercise of any right or privilege hereunder shall operate as a waiver thereof or of the exercise of any other right or privilege hereunder, nor shall any single or partial exercise of any such right or privilege preclude other or further exercise thereof or of any other right or privilege.

17. <u>Severability</u>. In the event that any provision of this Agreement should be held to be void, voidable, or unenforceable in a particular instance and such provision does not affect the basis of the bargain of the Parties hereunder, such provision shall be severed in such instance, and the remaining portions hereof shall remain in full force and effect. Furthermore, in lieu of such severed provision, there shall be added automatically in any such instance as a part of this Agreement, a provision as similar to the severed provision as may be possible and be legal, binding, and enforceable.

18. <u>No Partnership</u>. Nothing herein is intended to create nor shall it be construed or implied to create an agency, association, partnership, employment relationship, or joint venture between the Parties.

19. <u>Multiple Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which constitute one and the same agreement. The signature pages from any counterpart may be appended to any other counterpart to assemble

fully executed counterparts. Counterparts of this Agreement also may be exchanged via electronic mail or facsimile, and an electronic, photocopied, or .pdf version of any Party's authorized signature shall be deemed to be an original signature for all purposes.

20. <u>Interpretation and Construction</u>. This Agreement has been, and shall be deemed to have been, jointly drafted by the Parties, and no provision of this Agreement is to be interpreted for or against any Party because that Party or its legal representative drafted (or did not draft) such provision, as the Parties agree that they each contributed substantially to the drafting of this Agreement.

[SIGNATURES FOLLOW]

IN WITNESS WHEREOF, this Settlement Agreement is executed and delivered under seal this the _____ day of _____, 2021, effective as of the Effective Date.

**Margaret R. Westbrook**
Court Appointed Receiver for LStar Management, LLC

By: _____

Name: _____

Position: _____

STATE OF NORTH CAROLINA

COUNTY OF WAKE

I certify that the following person personally appeared before me this day and acknowledged to me that he voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: _____.

Date: _____, 2021.

My Commission Expires:
_____

_____
Notary Public

Print Name: _____

[Affix Notary Stamp or Seal]

IN WITNESS WHEREOF, this Agreement is executed and delivered under seal this the _____ day of _____, 2021, effective as of the Effective Date.

**CREDITOR**

Name:_____

STATE OF _____

COUNTY OF _____

I certify that the following person personally appeared before me this day and acknowledged to me that he voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: _____.

Date: _____, 2021.

My Commission Expires:
_____

_____
Notary Public

Print Name:_____

[Affix Notary Stamp or Seal]