IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-MC-00028

| IN RE: | ) |
| --- | --- |
| | ) |
| FORTITUDE FINANCIAL INVESTMENTS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| LSTAR MANAGEMENT, LLC, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF RECEIVER'S MOTION TO APPROVE SHARING AND RELEASE AGREEMENTS AND DISTRIBUTIONS**

## INTRODUCTION

Margaret R. Westbrook ("Receiver"), as Receiver for LStar Management, LLC ("Management"), by and through undersigned counsel, files this Memorandum in Support of Receiver's Motion to Approve Sharing and Release Agreements ("Sharing Agreements") and Distribution (the "Motion") seeking the Court's approval of the proposed Sharing Agreements between Management's creditors (the "Creditors") and Management, approving Receiver's plan for distributing the assets of the Receivership Estate pursuant to those Sharing Agreements, and approving distributions and payments made out of the Receivership Estate to date and various proposed distributions for payments of costs and expenses. Receiver respectfully requests that the Court approve the proposed Sharing Agreements between the Creditors and Management because the agreements establish an equitable distribution of the limited assets of the Receivership Estate, secure a greater recovery for the Creditors than otherwise would be possible for them to obtain individually, and consolidate and eliminate some of the liabilities of Management.

# ARGUMENT

On March 11, 2020, the Court entered an Order Granting Motion for Appointment of Receiver (ECF No. 9 - the "Receivership Order"), appointing Margaret R. Westbrook, Esq. as the receiver for Management. Among other things, the Receivership Order tasks the Receiver with acting "in the best interest of the Receivership Estate." Receivership Order at 2, ¶ 1(v). To that end, the Receivership Order also grants the Receiver the authority to "enter into such contracts … as are necessary for the management, care, repair, preservation, accounting, security, insuring, and/or liquidation of the Receivership Assets." Receivership Order at 4, ¶5(ix).

In light of these obligations, Receiver has diligently searched for, identified, and secured assets for the Receivership Estate since the entry of the Receivership Order and has managed to marshal many of Management's assets in an attempt to satisfy the Creditors. However, Management's debts still far exceed its assets. Accordingly, Receiver will be forced to pay less than all of the Creditors' recognized claims against Management.

Management and its subsidiaries represent a complicated web of entities.[1] Each subsidiary was created to participate in a real estate investment project in some manner, often with another unaffiliated joint venture partner or real estate fund. In most cases, the real estate ventures have not been profitable, and little to no funds will be available to Management or the relevant subsidiary to pay to Creditors. In some cases, economic interests in the subsidiaries were allocated to certain Creditors yet those subsidiaries have generated insufficient profits to satisfy returns due to those Creditors.

---

[1] A list of the various "Co-Invest" Entities which the Creditors invested in and which fall under the control of Receiver has been attached hereto as **Exhibit A**.

Recognizing that the Creditors will not be paid in full and after engaging in discussions with the Creditors, the Receiver negotiated a settlement agreement with Kyle Corkum in an attempt to generate additional funds for Creditors from future business interests of Mr. Corkum.[2] The Receiver also created the Sharing Agreements, a representative version of which is attached hereto as **Exhibit B**, to equitably distribute the limited resources of the Receivership Estate whereby Creditors agree that the Receiver may pool certain assets and distribute those assets on a pro rata basis. The Sharing Agreements propose to equitably distribute the assets of the Receivership Estate by making an interim payment (the "Interim Payment") to each Creditor on a pro rata basis based on each creditor's claim against Management or any of the other LStar related entities listed on Exhibit A to the Sharing Agreements.

Not all of the Creditors have agreed to or been required to execute Sharing Agreements. Certain creditors have agreed to waive their rights to future distributions and forgo partaking in the initial distribution in exchange for smaller, immediate partial payments. Additionally, the Receiver has evaluated all claims filed prior to the deadline to submit claims and the Receiver has in its judgment refused to pay certain claims. For example, some of the claims for profit sharing are valid, but not entitled to distributions based on the fact that LSM has no profits to distribute. Other claims are not valid claims against any Management related entity. A list of the Creditors who have agreed to execute a Sharing Agreement is attached hereto as **Exhibit C**.

After the Interim Payment, the Creditors will each be assigned Class B units in Fidelus Holding Co., LLC ("Fidelus") in value equal to the dollar amount of each Creditor's Remaining Claim after the receipt of the Interim Payment. Those Class B units will entitle each Creditor to

---

[2] A separate motion to approve the Settlement Agreement between Kyle Corkum and Receiver has been contemporaneously filed with this Court.

distributions by Fidelus; distributions which will reduce the amount of each Creditor's Remaining Claim on a dollar for dollar basis. Additionally, should Receiver make any future distributions to Creditors, those distributions will also reduce each Creditor's Remaining Claim and correspondingly, its interest in Fidelus on a dollar for dollar basis.[3]

The Sharing Agreements also provide an accounting of what funds have previously been paid by the Receiver to date for costs and expenses.[4] Finally, the Sharing Agreements outline proposed distributions, representing accrued fees and other required payments to creditors, professionals, and the Receiver itself.[5] The Sharing Agreements detail the reserve funds that the Receiver will retain to pay the costs and other necessary fees incurred in ongoing administration and preservation of the Receivership Estate. Any remaining funds after payment of all costs and expenses and taxes would then be distributed to Creditors in future distributions using the same pro rata percentages. In exchange for receiving their agreed upon percentages of the Receivership Estate and potential future profit from Fidelus in the amount of their recognized Remaining Claim, the Creditors agree to release their claims against Management, Receiver, and Fortitude Financial Investments, Inc., including any economic interest rights, allowing for a pooling of the assets and the pro rata distributions.

The Receiver believes that the Sharing Agreements are in the best interest of the Receivership Estate where the Sharing Agreements permit Receiver to pool assets and to equitably distribute the limited assets of the Receivership Estate to the Creditors on a pro rata

---

[3] **Exhibit C** to the Sharing Agreements also shows the proposed Interim Payment to each Creditor and the amount of each Creditor's Remaining Claims.
[4] **Exhibit D** to the Sharing Agreements is the full trust account ledger showing all amounts paid into the receivership estate and distributed from the receivership estate, a true and accurate copy of which has been attached hereto.
[5] **Exhibit E** to the Sharing Agreements details proposed distributions and the reserve to be retained by the Receiver. A true and accurate copy of this document has been attached hereto.

basis with an Interim Payment and hopefully make additional future distributions. In the absence of the Sharing Agreements, there is the potential that a few Creditors will take an outsized portion of the Receivership Estate's assets and leave the other Creditors with little to nothing to satisfy their claims. Further, the cost of investigating and determining the claims of each Creditor and economic interest holder in each subsidiary will increase the costs of the Receiver, leading to a waste of the Court's, the Creditors', and the Receiver's time, effort, and limited resources.

Should the Court approve the Sharing Agreements, Receiver would be in a position to make the Initial Payment out of the assets in the Receivership Estate pursuant to the Sharing Agreements. As explained above and as outlined in the Sharing Agreements, Receiver's plan for distributing further assets of the Receivership would be based on the Creditors' Remaining Claims and relevant pro rata percentages.[6]

## **CONCLUSION**

For these reasons, Receiver respectfully requests that the Court enter an Order approving the proposed Sharing Agreements between Management and the Creditors, approving Receiver's plan for distributing the assets of the Receivership Estate, and approving the payment of costs and expenses as outlined in the Sharing Agreements.

Respectfully submitted, this the 12th day of November, 2021.

---

[6] Should the Court decline to approve the Sharing Agreements, Receiver would need to develop a new plan for the equitable distribution of the assets of the Receivership Estate and would respectfully request additional time to develop such a plan.

K&L GATES LLP

*/s/ Margaret R. Westbrook*
Margaret R. Westbrook
N.C. State Bar No. 23327
K&L Gates LLP
4350 Lassiter at North Hills Ave., Suite 300
Raleigh, North Carolina 27609
Telephone: (919) 743-7311
Fax: (919) 516-2111
Margaret.Westbrook@klgates.com
*Counsel to Margaret R. Westbrook, Esq., Receiver for LStar Management, LLC*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of this document to be filed electronically through CM/ECF and, thus, to be served by electronic notification on those parties properly registered for electronic service through this Court's CM/ECF system, including the following:

James S. Livermon, III
Womble Bond Dickinson (US) LLP
555 Fayetteville St., Suite 1100
Raleigh, NC 27601
Telephone: 919-755-2148
Fax: 919-755-6178
Email: charlie.livermon@wbd-us.com
*Counsel for Fortitude Financial Investments, Inc.*

Lisa P. Sumner
Poyner Spruill LLP
301 Fayetteville St., Suite 1900
Raleigh, NC 27601
Telephone: 919-783-6400
Fax: 919-783-1075
Email: lsumner@nexsenpruet.com
*Counsel for LStar Development Group, Inc.*

D. Kyle Deak
Troutman Pepper Hamilton Sanders LLP
305 Church at North Hills Street, Suite 1200
Raleigh, NC 27609-2669
Telephone: 919-835-4133
Email: kyle.deak@troutman.com
*Counsel for LA Coinvest, LLC*

Zachary H. Smith
100 North Tryon Street
Suite 4700
Charlotte, NC 28202-4003
Telephone: 704-331-1046
Fax: 704-378-1909
zacharysmith@mvalaw.com
*Counsel for GDMB Holding LLC, TOBI IV LLC, and TOBI V LLC*

Respectfully submitted this 12th day of November, 2021.

**K&L GATES LLP**

*/s/ Margaret R. Westbrook*
Margaret R. Westbrook
N.C. State Bar No. 23327
K&L Gates LLP
4350 Lassiter at North Hills Ave., Suite 300
Raleigh, North Carolina 27609
Telephone: (919) 743-7311
Fax: (919) 516-2111
Margaret.Westbrook@klgates.com
*Counsel to Margaret R. Westbrook, Esq., Receiver for LStar Management, LLC*