# EXHIBIT A

# SETTLEMENT AND RELEASE AGREEMENT

**THIS SETTLEMENT AND RELEASE AGREEMENT** ("**Settlement Agreement**") is entered into by and between Margaret R. Westbrook as Receiver ("**Receiver**") for LStar Management, LLC ("**Management**"), a North Carolina limited liability company, LStar Development Group, Inc. and Landquest Legacy of North Carolina, LLC and its subsidiary and affiliate companies (collectively "**Development**"), Patrick Sullivan ("**Sullivan**"), William Hampton Pitts ("**Pitts**"), Rachel Vradenburgh ("**Vradenburgh**" and with Sullivan and Pitts the "**Employees**"), and Kyle V. Corkum ("**Corkum**"). Receiver, Management, the Employees, Development, and Corkum may be referred to herein individually as a "**Party**" and collectively as the "**Parties**." The Effective Date of this Agreement is _____ , 2022 (the "**Effective Date**").

## RECITALS

WHEREAS, the Employees have asserted or threatened to assert various claims against Management for amounts due and owing (the "**Employee Claims**").

WHEREAS, Corkum, Development and the Employees have been involved in ongoing litigation in *Corkum, et al. v. Vining, et al.*, Wake County Superior Court File No. 21 CVS 8005, *LStar Development Group v. Vining, et al.*, United States District Court (EDNC) File No. 5:20-cv-0184, and *Pitts, et al. v. LStar Development Group, Inc.*, United States District Court (EDNC) File No. 5:20-cv-0525 (the "**Development Litigation**"). The Development Litigation and Employee Claims as well as all additional claims any of the Parties to this Settlement Agreement brought, has, claims to have or at any time may have had against any other Party to this Settlement Agreement that arise from acts, omissions and occurrences that took place prior to the Effective Date shall be collectively referred to as the "**Disputed Matters**."

WHEREAS, to avoid the future costs, burdens, and distractions of litigation, the Parties have mutually agreed to resolve with finality the Disputed Matters and to release and discharge any and all claims that any Party has asserted, could have asserted, or has threatened to assert, all pursuant and subject to, and in accordance with, the terms and conditions of this Settlement Agreement.

NOW, THEREFORE, in consideration of the representations, acknowledgments, promises, recitals, mutual covenants, and terms and conditions contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1.  Binding Effect. All parts of this Settlement Agreement are binding, enforceable, and incorporated herein by reference, including any recitals. This Settlement Agreement is effective on the date of its execution by all parties and upon approval of the United States District Court for the Eastern District of North Carolina (**"Effective Date"**).

2.  Settlement Payment. The Parties acknowledge and agree as follows:

a. Receiver shall file a Motion to Approve this Settlement Agreement (the "Motion") with the Eastern District of North Carolina in case number 5:19-MC-00028 seeking court approval for the Receiver to make payments to the Employees in the amount of $12,475.00 each.

b. In full satisfaction of the Employees Claims, the Receiver shall pay and the Employees shall receive a payment of $12,475.00 each not later than 15 days after the Effective Date.

The Employees release and relinquish all claims, rights, economic interests or other rights and remedies, if any, to any other distributions or payments from or to the Receiver, assets held by the Receiver, and any further distributions that may be made by or to the Receiver, any and all LStar Entities, and their affiliates, subsidiaries, officers, directors, employees, guarantors, attorneys, and agents to include, but not limited to, Management and Development, with the exception of any claims for defense and indemnity as set forth in Paragraph 5 below. Following the execution of this Settlement Agreement, Employees shall no longer be owners of any economic rights, interests, or remedies in or relating to the LStar Entities. Provided, however, that nothing in this Agreement shall be construed to waive, release, or otherwise deprive the Employees of any right to defense and indemnity again third-party claims to which they may be otherwise entitled under the terms of any of Development's articles of incorporation, By-Laws, and the like (collectively "**Organizational Documents**") or any policy of insurance issued to Management or Development. Notwithstanding the foregoing, Employees' rights, if any, under the Organizational Documents or any other indemnity agreements with Management or Development are strictly limited to such rights Employees may have and may use to attempt to secure and maintain coverage under one or more of Management or Development's insurance policies only, and Employees shall have no independent right or cause of action to assert against Management or Development under the Organizational Documents or any other agreements with Management or Development to include rights to indemnity. The Parties expressly agree that Employee's rights under the Organizational Documents and any indemnity agreements with Management or Development survive the execution and delivery of this Agreement only and strictly to the extent Employees may be able to use them to attempt to secure coverage under one or more of Management or Development's insurance policies ("**Insured Claims**"). With the sole exception of Insured Claims, all other claims and rights that Employees may have under the Organizational documents and under any laws that might otherwise afford them rights as a former employee, officer or director of Management, Development or Corkum, including, but not limited to, all rights Employees might otherwise have for indemnity from Management, Development or Corkum, are specifically waived and released by this Agreement. Neither Management, Development nor Corkum provide any warranty or representation as to whether Employees may qualify for insurance coverage from one of Management or Development's insurance policies or the terms, conditions, provisions and exclusions of these insurance policies.

c. Employees release and relinquish all claims, rights and interests related to the Disputed Matters against Receiver, Management, Development and Corkum and any respective representatives, officers and directors.

3. Affirmative Covenants. In order to settle the Disputed Matters between the Parties, the Parties agree and acknowledge as follows:

a. Not later than fourteen (14) business days after the Effective Date, each Party shall dismiss or cause to be dismissed, **with prejudice**, the Development Litigation, including, but not limited to, any and all appeals noticed or otherwise taken by that Party. Subject to the terms of this Settlement Agreement, any dismissal ultimately resulting from such filings shall be without prejudice to the Parties' rights, at any time thereafter, to assert against the other Parties any and all claims and defenses asserted in the Development Litigation.

b. The Parties agree and acknowledge that they shall timely execute and/or deliver, or cause to be executed and/or delivered, as applicable, all documents or materials requested by any other Party that are reasonably necessary to carry out or otherwise effectuate the terms and conditions of this Settlement Agreement. Further, the Parties agree to take, or cause to be taken, all actions, and to do, or cause to be done, and to assist and cooperate with the other Party in doing, all things reasonably necessary or reasonably advisable to perform or otherwise effectuate the transactions contemplated by this Settlement Agreement.

c. Pending completion of the dismissals set forth in Section 2(a) of this Settlement Agreement, the Parties agree that they will take all actions reasonably necessary to stay, obtain extensions of time to act, or otherwise limit proceedings in the Development Litigation, including any appeals, and each Party will take any actions reasonably necessary to facilitate the other Parties' efforts in obtaining such a stay, extension of time, or other limitation of proceedings to enable the Parties to finalize and consummate their obligations under this Settlement Agreement.

d. Nothing in this Settlement Agreement is intended to, nor shall, operate as an extension of any applicable time limitations or statutes of limitation applicable to the Disputed Matters, including extending or in any way modifying the applicable time limitations on the re-filing of the Development Litigation or the assertion of the Employee Claims.

4. Management, Corkum and Development Release. As of the Effective Date of this Settlement Agreement, Management, Development, and Corkum, for themselves and on behalf of their successors, assigns, agents, representatives, and predecessors-in-interest, do hereby forever relieve, release, and discharge the Employees and their officers, employees, agents, successors, attorneys, heirs, affiliates, subsidiaries, and each such Party's respective officers, directors, managers, representatives, employees, agents, shareholders, members, partners, insurers, contractors, attorneys, successors-in-interest, predecessors-in-interest, and assigns (collectively, the "**Employee Releasees**"), from any and all rights, duties, claims, causes of action, debts, liabilities, demands, obligations, promises, acts, costs, expenses (including, but not limited to, attorneys' fees), counterclaims, agreements, promises, and affirmative defenses, whether known or unknown, suspected or unsuspected, asserted or unasserted, accrued or unaccrued, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, that were, could have been, or at any time ever could be, asserted through and until the Effective Date, including, without limitation, all such claims that Management, Development, and Corkum may have as an individual, class member, putative class members, partner (limited or general), guarantor, shareholder, officer, director, unit holder, or limited liability company member (the "**Employee Released Claims**"); provided, however, this release does not extend to, and has no effect upon: (i) Management, Development or Corkum's right to enforce the terms and conditions of this Settlement Agreement; or (ii) claims which cannot be released as a matter of law. Management, Development, and Corkum understand and agree that this Settlement Agreement fully and finally releases and forever resolves the

Employee Released Claims, including claims that may be unknown, unanticipated and/or unsuspected and expressly waive any right to assert hereafter that any claims were excluded from this Settlement Agreement through ignorance, oversight, error, or otherwise. Management, Development, and Corkum agree that this Paragraph constitutes a waiver of any statutory provision, right, or benefit of any state or territory of the United States or any jurisdiction, and any principle of common law, at law or in equity, that prohibits the waiver of unknown claims.

Management, Development and Corkum further agree to waive any claim for damages occurring at any time after the date of this Settlement Agreement because of alleged continuing effects of any alleged wrongful acts or omissions, known or unknown, involving the Employee Releasees which occurred on or before the date of this Settlement Agreement and to waive any right they may have to sue for injunctive relief from the alleged continuing effects of any alleged wrongful acts or omissions occurring prior to the date of this Settlement Agreement.

5. Employee Release. As of the Effective Date of this Settlement Agreement, subject to the terms of Section 21, each Employee agrees that the Employee will not continue any existing suit, or file any new action against Management, Development, or Corkum in any forum for any reason under any laws or regulations based on any conduct up to and including the Effective Date. Each Employee further agrees that the Employee will not seek or accept any damage award or settlement relating to any suit of any nature against Management. The causes of action released herein include, but are not limited to, those arising under each of the following:

- All Civil Rights Acts to include the Civil Rights Acts of 1866 and 1964;
- National Labor Relations Act;
- Fair Labor Standards Act;
- Employee Retirement Income Security Act of 1974;
- Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991;
- Age Discrimination in Employment Act of 1967;
- Equal Pay Act of 1963;
- Americans with Disabilities Act of 1990;
- Family and Medical Leave Act of 1993 to include Families First Coronavirus Response Act ("**FFCRA**");
- The Occupational Safety and Health Act of 1970;
- Any other statutory or common law claim, limitation, or regulation of the employment relationship under North Carolina state law, including the North Carolina Wage and Hour Act, the North Carolina Retaliatory Discrimination Act, the North Carolina Equal Employment Practices Act;
- Any federal, state or local insurance, human rights, civil rights, wage-hour, or pension laws, rules and regulations;
- All labor and employment laws, rules or regulations, or public policy;
- All contract or tort laws;
- All claims of retaliation;
- All claims arising under common law;
- All claims arising under Woodson v. Rowland, 329 N.C. 330, 407 S.E.2d 222 (1991) or its progeny;

- All alleged violations of any national, state or local statutes, laws, or ordinances; and
- All other actions whether cognizable in law or in equity against Management, Development and/or Corkum.

Without in any way limiting the foregoing , Employees, as of the Effective Date of this Settlement Agreement, for themselves and on behalf of their successors, assigns, agents, representatives, and predecessors-in-interest, also do hereby forever relieve, release, and discharge Management, Development, and Corkum and their officers, employees, agents, successors, attorneys, heirs, affiliates, subsidiaries, and each such Party's respective officers, directors, managers, representatives, employees, agents, shareholders, members, partners, insurers, contractors, attorneys, successors-in-interest, predecessors-in-interest, and assigns (collectively, the "**LStar Releasees**" and together with the Employee Releasees the "**Releasees**"), from any and all rights, duties, claims, causes of action, debts, liabilities, demands, obligations, promises, acts, costs, expenses (including, but not limited to, attorneys' fees), counterclaims, agreements, promises, and affirmative defenses, whether known or unknown, suspected or unsuspected, asserted or unasserted, accrued or unaccrued, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, that were, could have been, or at any time ever could be, asserted through and until the Effective Date, including, without limitation, all such claims that the Employees may have as individuals, class members, putative class members, partners (limited or general), guarantors, shareholders, officers, directors, unit holders, or limited liability company members (the "**LStar Released Claims**" and together with the Employee Released Claims the "**Released Claims**"); provided, however, this release does not extend to, and has no effect upon: (i) any benefits that have accrued, and to which Employee has become vested, under any employee benefit plan; (ii) Employee's right to enforce the terms and conditions of this Settlement Agreement; (iii) Employee's right to file a charge or complaint, or participate in an investigation, with any federal state or local governmental agency or commission; provided, however, this Settlement Agreement does waive Employee's right to receive any monetary damages associated with any such charge, complaint, investigation or other action; (iv) claims which cannot be waived as a matter of law, such as claims for unemployment benefit rights and workers' compensation; (v) any Insured Claims as that term is defined above; or (vi) subject to the limitations set forth in in this Agreement, Sullivan's right, if any, to be defended, indemnified and held harmless under any indemnity agreement or insurance policy related to the ongoing litigation in *Kavanaugh v. LStar Development Group, Inc., et al.*, Commonwealth of Massachusetts, Suffolk County, Superior Court File No. 19-2619E ("**Kavanaugh Litigation**"). The Employees understand and agree that this Settlement Agreement fully and finally releases and forever resolves the LStar Released Claims, including claims that may be unknown, unanticipated and/or unsuspected and expressly waive any right to assert hereafter that any claims were excluded from this Settlement Agreement through ignorance, oversight, error, or otherwise. The Employees agree that this Paragraph constitutes a waiver of any statutory provision, right, or benefit of any state or territory of the United States or any jurisdiction, and any principle of common law, at law or in equity, that prohibits the waiver of unknown claims.

Notwithstanding the foregoing, Employees' rights, if any, under the Organizational Documents or any other indemnity agreements with Management or Development are strictly limited to such rights Employees may have and may use to attempt to secure and maintain coverage under one or more of Management or Development's insurance policies only, and Employees shall have no independent right or cause of action to assert against Management or Development under

the Organizational Documents or any other agreements with Management or Development to include rights to indemnity. The Parties expressly agree that Employee's rights under the Organizational Documents and any indemnity agreements with Management or Development survive the execution and delivery of this Agreement only and strictly to the extent Employees may be able to use them to attempt to secure coverage for one or more Insured Claims. With the sole exception of Insured Claims, all other claims and rights that Employees may have under the Organizational documents and under any laws that might otherwise afford them rights as a former employee, officer or director of Management, Development or Corkum, including, but not limited to, all rights Employees might otherwise have for indemnity from Management, Development or Corkum, are specifically waived and released by this Agreement. Neither Management, Development nor Corkum provide any warranty or representation as to whether Employees may qualify for insurance coverage from one of Management or Development's insurance policies or the terms, conditions, provisions and exclusions of these insurance policies.

Employees further agree to waive any claim for damages occurring at any time after the date of this Settlement Agreement because of alleged continuing effects of any alleged discriminatory or other wrongful acts or omissions, known or unknown, involving the LStar Releasees which occurred on or before the date of this Settlement Agreement and to waive any right they may have to sue for injunctive relief from the alleged continuing effects of any alleged discriminatory or other wrongful acts or omissions occurring prior to the date of this Settlement Agreement.

Employees further agree to waive any claim for damages occurring at any time after the date of this Settlement Agreement because of alleged continuing effects of any alleged wrongful acts or omissions, known or unknown, involving the Management, Development or Corkum which occurred on or before the date of this Settlement Agreement and to waive any right they may have to sue for injunctive relief from the alleged continuing effects of any alleged wrongful acts or omissions occurring prior to the date of this Settlement Agreement.

Employees have alleged and Management, Development and Corkum each deny Employees are owed any unpaid wages. Nevertheless and in connection with the execution and delivery of this Agreement, Employees represent and warrant, acknowledge and agree that, upon payment of the amounts described in Paragraph 2(b) above, each of them will be deemed to have been paid in full for any and all wages, bonuses, commissions or wage supplements owed to him or her by the LStar Releasees as a result of his employment and that no additional compensation or payment of any kind whatsoever is owed to Employees for any reason. Nothing herein shall be construed as admission by Management, Development or Corkum that Employees are owed unpaid wages.

To the degree, if any, Employee claims to own any interest in Management or Development, Employee, by executing and delivering this Agreement, does hereby relinquish and all such interests and these interests shall be deemed to have been redeemed by the entity through which Employee claims an ownership interest.

6. Covenant Not to Sue.

a. Subject to the terms of this Settlement Agreement, each Party covenants and warrants that it will not re-commence, maintain, or prosecute any action or suit at law or in equity against the other Party based on any of the Released Claims, or in any way intentionally aid in the commencement, maintenance, or prosecution of any action or suit at law or in equity against the other Party based on any of the Released Claims while this Settlement Agreement remains in effect.

b. This Settlement Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against any action, suit, claim, investigation, review or other judicial or administrative proceeding, at law or in equity, before or by any governmental body or arbitrator that may be instituted, prosecuted, or attempted in breach of this Settlement Agreement, including, but not limited to, any claim that is released in this Settlement Agreement.; provided that nothing in this Section 6(b) shall: (i) bar Employee's right to file an administrative charge with the Equal Employment Opportunity Commission ("**EEOC**"), the United States Department of Labor ("**DOL**"), the National Labor Relations Board ("**NLRB**"), or any other similar federal, state or local agency or (ii) preclude Employee's participation in an investigation by the SEC, EEOC, DOL, NLRB or any other similar federal, state or local agency. This Settlement Agreement does not constitute and shall not be construed to waive each Party's right to recover damages for breach of this Settlement Agreement or to seek injunctive relief with respect to any breach or threatened breach by any other Party of this Settlement Agreement.

c. The Parties agree that they shall not exhort, encourage or provide voluntary support to any other third party in filing claims against any other Party to this Agreement, and that it shall be deemed a breach of the Covenant Not to Sue for any Party to encourage or facilitate the filing of litigation by a third party against any other Party to this Agreement.

7. Confidentiality. The Parties agree that the terms of this Agreement and the facts, circumstances, claims, and contentions related to the Disputed Matters and the prior business and employment relationship that formerly existed between the Parties shall be considered confidential and shall not, directly or indirectly, be disclosed to anyone other than the Parties hereto, except it is permissible to disclose these matters to: (a) the Parties; (b) an attorney retained to provide legal advice to such Party; (c) a Party's accountant or similar professional, tax, financial or estate planning advisor; (d) a Party's insurer or insurance representative in connection with the procurement or renewal of any insurance policy; and (e) such other person or organization upon order of a court of competent jurisdiction. Should this Agreement become subject to discovery in connection with the Kavanaugh Litigation, any party to the Kavanaugh Litigation may disclose this Agreement pursuant to the Protective Order entered in that case without the necessity of first securing a court order.

It is understood and agreed by the Parties that all Parties shall be permitted to state, but only in the circumstance of a direct unsolicited and unprompted inquiry by a third party regarding the nature of the Parties former business relationship, that: (a) the Parties previously engaged in a business transaction together and that the Employees were employed by Development, and (b) the Parties' prior business relationship or employment and the termination thereof was amicably ended

to the satisfaction of all Parties. This covenant shall terminate on the tenth anniversary of this Agreement.

8. Non-Disparagement.

(a) The term "disparaging" shall mean any and all oral or written statements, representations, insinuations, utterances, communications, e-mails, marketing pieces, websites, website postings, conversations, written materials, and the like, that, directly or indirectly, represent, suggest or insinuate that any Party: (i) has engaged in or engages in any unlawful or unethical conduct, (ii) has violated or violates any applicable laws, statutes and/or ordinances, (iii) has engaged in or engages in unfair, misleading, false, or anti-competitive business practices, and (iv) has engaged in commercial conduct that is unfit, unsafe, or violates duties or obligations owed to others.

(b) Each Party agrees to refrain from engaging in any communication and conduct disparaging any other Party with respect to any transactions, events, omissions, or occurrences described in this Agreement.

(c) Requests for employment references from Development should be directed to Development's president, Kyle V. Corkum. Provided that all reference requests are directed in accordance with this Section 8(c) and further provided the prospective employer contacts Development's president, Development will provide a neutral reference if ever contacted about the Employees' employment. Such references shall only consist of dates of employment and last job title.

9. Party Defaults. If any Party fails to comply with any of its obligations under this Agreement, and that failure continues for ten (10) days after receipt of written notice of its failure, then the Party shall be in default under this Agreement, and its failure to comply shall constitute an "**Event of Default**." as a result of which any other Party may exercise any and all rights and remedies available to it under applicable law and in equity. Notwithstanding the foregoing, the Releasees shall continue to hold all rights and benefits they have obtained under this Settlement Agreement and have any and all rights and remedies in law or equity under state and federal law against the other Party arising from or relating to the other Party's non-compliance.

10. Representations and Warranties. Each Party represents, warrants, and agrees that:

a. The person signing this document on his, her, or its behalf is duly authorized to enter into this Settlement Agreement, and his or her signature is binding upon that Party;

b. The Party has carefully read this Settlement Agreement after consultation with its respective attorneys or advisors to the extent it deems appropriate, and the contents of the Settlement Agreement are known to and understood by the Party.

c. The Party has carefully read and reviewed the Settlement Agreement after consultation with its respective attorneys or advisors to the extent it deems appropriate, and the Party knows, understands, and agrees to the contents of the Settlement Agreement;

d.  The Party is executing, or causing to be executed, this Settlement Agreement on an informed basis;

e.  The Party has entered into this Settlement Agreement and executed and delivered all documents in connection herewith of the Party's own free will and accord and without threat, duress or other coercion of any kind; and

f.  This Settlement Agreement is binding and enforceable in accordance with its terms.

11. Notices. Notices under this Settlement Agreement shall be considered given when delivered via First Class U.S. Mail as follows:

To Receiver and Management:

Margaret R. Westbrook
Receiver for LStar Management, LLC
K&L Gates LLP
4350 Lassiter at North Hills, Suite 300
Raleigh, NC 27619

To Kyle Corkum and Development:

Donald G. Hunt, Jr.
Attorney for Kyle Corkum and Development
Akins Hunt Atkins, PC
570 New Waverly Place, Suite 240
Cary, NC 27518

To the Employee:

Kathryn F. Abernethy, Esq.
C/O: The Noble Law Firm, PLLC
141 Providence Rd., Ste. 210
Chapel Hill, NC 27514

12. No Admission of Liability. Neither this Settlement Agreement, nor any statement herein, nor any action or payment taken or made pursuant to this Settlement Agreement is an admission of liability, but rather, is made in order to settle the Disputed Matters described herein.

13. No Waiver of Obligations Under This Agreement. Nothing contained herein shall be construed to release or discharge any obligation of any Party to this Settlement Agreement arising under this Settlement Agreement.

14. No Assignment of Released Claims. The Parties represent and warrant that, except as expressly set forth herein, no portion of any claim, right demand, action or cause of action released by this Agreement has been asserted, filed, assigned, subrogated or transferred, voluntarily, by operation of law, or otherwise, to any other person or entity.  In the event that any

claim, demand or suit should be made or instituted against any Party or Parties related hereby because of any purported assignment, subrogation, or transfer of a released claim, the Party alleged to have made the purported assignment or transfer of such claim, demand or suit, shall indemnify, defend and hold harmless the Parties who have been released from the assigned or transferred claim and pay and satisfy such claim, demand or suit, and pay the necessary expenses of investigation and defense of this claim, including but not limited to reasonable attorneys' fees and costs incurred by reason thereof to include the reasonable attorneys' fees incurred by the Parties who have been released from the assigned or transferred claim.

15. Costs and Attorneys' Fees. Notwithstanding any other provision of this Settlement Agreement, the Parties acknowledge and agree that they shall bear their own costs and attorneys' fees, including, but not limited to, all expenses and attorneys' fees and filing fees incurred in connection with the Disputed Matters and this Settlement Agreement.

16. Predecessors, Successors, Assigns, and Beneficiaries. This Settlement Agreement shall inure to the benefit of and shall bind the successors, assigns, heirs, and beneficiaries of the Parties, and each of them. This Settlement Agreement has been entered into between the Parties solely for the purpose of giving effect to the agreements herein provided between and for the exclusive benefit of Parties, and no other person or entity will have or acquire any rights, benefits, claims, or remedies on account of this Settlement Agreement or any of the matters provided for herein unless otherwise set forth herein. No Party may assign, transfer, novate, or otherwise alienate any of its rights or obligations under this Settlement Agreement (including any rights to payment) without the prior written consent of the other Parties.

17. Choice of Law and Forum. This Settlement Agreement shall be governed by and interpreted in accordance with the laws of the State of North Carolina as are applied to contracts made and to be wholly performed in this State, without regard to any choice of law rules to the contrary. Any action, suit, or other claim instituted to enforce this Settlement Agreement shall be brought in a state or federal court of jurisdiction in the State of North Carolina.

18. Merger and Integration. This Settlement Agreement constitutes a single, integrated contract expressing the entire agreement of the Parties relative to the terms set forth herein. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party with respect to the terms of this Settlement Agreement, except as specifically set forth in this Settlement Agreement. All prior discussions and negotiations with respect to the terms of this settlement have been and are merged and integrated into, and are superseded by, the Settlement Agreement and the documents executed in connection herewith.

19. Amendment; Non-Waiver. This Settlement Agreement shall not be amended or modified except by a written amendment signed by each of the Parties, which writing expressly states that it is intended to be an amendment to or modification of this Settlement Agreement. No other writing, irrespective of its content, and no course of conduct will act as an amendment or modification of this Settlement Agreement. Any waiver by a Party of its rights hereunder shall be effective only if in writing, and no waiver shall be implied by a party's action(s) or inaction(s). No failure or delay on the part of any Party in the exercise of any right or privilege hereunder shall operate as a waiver thereof or of the exercise of any other right or privilege hereunder, nor shall

any single or partial exercise of any such right or privilege preclude other or further exercise thereof or of any other right or privilege.

20. Severability. In the event that any provision of this Settlement Agreement should be held to be void, voidable, or unenforceable in a particular instance and such provision does not affect the basis of the bargain of the Parties hereunder, such provision shall be severed in such instance, and the remaining portions hereof shall remain in full force and effect. Furthermore, in lieu of such severed provision, there shall be added automatically in any such instance as a part of this Settlement Agreement, a provision as similar to the severed provision as may be possible and be legal, binding, and enforceable.

21. Multiple Counterparts. This Settlement Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which constitute one and the same agreement. The signature pages from any counterpart may be appended to any other counterpart to assemble fully executed counterparts. Counterparts of this Settlement Agreement also may be exchanged via electronic mail or facsimile, and an electronic, photocopied, or .pdf version of any Party's authorized signature shall be deemed to be an original signature for all purposes.

22. Interpretation and Construction. This Settlement Agreement has been, and shall be deemed to have been, jointly drafted by the Parties, and no provision of this Settlement Agreement is to be interpreted for or against any Party because that Party or its legal representative drafted (or did not draft) such provision, as the Parties agree that they each contributed substantially to the drafting of this Settlement Agreement.

23. Age Discrimination Requirements. Each Employee represents and warrants that Employee is aware, understands and agrees that he or she is voluntarily entering into and signing this Settlement Agreement; that all claims waived, released and discharged in this Settlement Agreement include any and all claims Employee has or may have against the LStar Releasees, including any and all claims under the Age Discrimination in Employment Act, as amended (the "**ADEA**"). Each Employee acknowledges and agrees that he or she had at least twenty-one (21) days to review and consider the terms of this Settlement Agreement and is hereby advised of the Employee's right to consult with a lawyer of his or her choosing, that Employee has in fact received legal advice and counsel of The Noble Law Firm in connection with the negotiation and execution of this Agreement, and that Employee is satisfied with the nature of the legal advice Employee as received. Each Employee understands that he or she has seven (7) days from the date of his and her execution of this Agreement to revoke the provisions of this Settlement Agreement relating to Employee's waiver of any claims pursuant to the ADEA. If any Employee decides to revoke the release of claims under the ADEA in this Settlement Agreement, such Employee must deliver written notice to [Donald G. Hunt, Jr., 570 New Waverly Place, Suite 240, Cary, NC 27518]. If such Employee has not revoked his or her release of claims under this Section 21 of the Settlement Agreement, the eighth day after such Employee's execution of this Settlement Agreement shall be the "**Effective Date**" for purposes of the release of claims under the ADEA under this Settlement Agreement. By signing this Settlement Agreement, each Employee acknowledges that the period of time used by him or her prior to signing this Settlement Agreement was sufficient time to consider and review this Settlement Agreement, it being expressly understood that neither

Management, Developer or Corkum is imposing a requirement or duress on the Employee to take less than twenty-one (21) days to consider signing this Settlement Agreement.

[SIGNATURES FOLLOW]

Page **12** of **16**

Case 5:19-mc-00028-D   Document 75-1   Filed 05/26/22   Page 13 of 18

IN WITNESS WHEREOF, this Settlement Agreement is executed and delivered under seal this the 26th day of May, 2022.

**Margaret R. Westbrook**
Court Appointed Receiver for LStar Management, LLC

By:
Name: Margaret R Westbrook
Position: Receiver for LStar Management, LLC

STATE OF NORTH CAROLINA

COUNTY OF WAKE

I certify that the following person personally appeared before me this day and acknowledged to me that he voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: Receiver.

Date: May 26, 2022.

My Commission Expires: 06/28/23

Haley Fields
Notary Public

Print Name: Haley Fields

[Affix Notary Stamp or Seal]



HALEY FIELDS
Commission Expires
Notary Public
June 28, 2023
Wake County, NC

IN WITNESS WHEREOF, this Agreement is executed and delivered under seal this the 6th day of May, 2022, effective as of the Effective Date.

Kyle V. Corkum

Name: _____

STATE OF NORTH CAROLINA

COUNTY OF WAKE

I certify that the following person personally appeared before me this day and acknowledged to me that he voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: Kyle V. Corkum.

Date: May 6, 2022.

My Commission Expires:

4/22/2025

[Affix Notary Stamp or Seal]

Notary Public

Print Name: Kristen Atkins Lee

EMPLOYEE HAS READ THIS ENTIRE RELEASE CAREFULLY. EMPLOYEE FULLY UNDERSTANDS THE FINAL AND BINDING EFFECT OF THIS RELEASE. EMPLOYEE AGREES THAT THIS RELEASE IS WRITTEN IN A MANNER CALCULATED TO BE UNDERSTOOD BY HIM AND THAT IF HE DOES NOT UNDERSTAND ANY PART OF THIS RELEASE, HE HAS HAD A FULL OPPORTUNITY TO HAVE IT EXPLAINED TO HIM BY A LAWYER OF HIS OWN SELECTION. THE ONLY PROMISES OR REPRESENTATIONS MADE TO EMPLOYEE ABOUT THIS RELEASE OR TO INDUCE EMPLOYEE TO SIGN THIS RELEASE ARE CONTAINED IN THIS RELEASE. EMPLOYEE AGREES THAT HE WAS NOT PRESSURED OR COERCED IN ANY WAY TO SIGN THIS RELEASE. EMPLOYEE IS SIGNING THIS RELEASE KNOWINGLY AND VOLUNTARILY AND AFTER DUE CONSIDERATION, ENTERED INTO THIS RELEASE AND RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS SHE HAS OR MAY HAVE AGAINST EMPLOYER REGARDLESS OF THE DISCOVERY OF NEW FACTS. BY SIGNING THIS RELEASE, EMPLOYEE FURTHER REPRESENTS THAT, AFTER THE EFFECTIVE DATE, HE WILL HAVE RECEIVED ALL BENEFITS, RIGHTS, AND COMPENSATION TO WHICH SHE IS ENTITLED PURSUANT TO THE FAIR LABOR STANDARDS ACT THE NORTH CAROLINA WAGE AND HOUR ACT, AND FAMILY AND MEDICAL LEAVE ACT.

IN WITNESS WHEREOF, this Agreement is executed and delivered under seal this the 6th day of May, 2022, effective as of the Effective Date.

**Patrick Sullivan**

Name: _[signature]_


STATE OF NORTH CAROLINA

COUNTY OF WAKE

I certify that the following persons personally appeared before me this day and acknowledged to me that she and he voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: Patrick G. Sullivan.

Date: 6th of May, 2022.

My Commission Expires: 01/03/2026

Notary Public _[signature]_

Print Name: Sammvel J. Charrier III

[Affix Notary Stamp or Seal]

[Affix Notary Stamp or Seal]

EMPLOYEE HAS READ THIS ENTIRE RELEASE CAREFULLY. EMPLOYEE FULLY UNDERSTANDS THE FINAL AND BINDING EFFECT OF THIS RELEASE. EMPLOYEE AGREES THAT THIS RELEASE IS WRITTEN IN A MANNER CALCULATED TO BE UNDERSTOOD BY HIM AND THAT IF HE DOES NOT UNDERSTAND ANY PART OF THIS RELEASE, HE HAS HAD A FULL OPPORTUNITY TO HAVE IT EXPLAINED TO HIM BY A LAWYER OF HIS OWN SELECTION. THE ONLY PROMISES OR REPRESENTATIONS MADE TO EMPLOYEE ABOUT THIS RELEASE OR TO INDUCE EMPLOYEE TO SIGN THIS RELEASE ARE CONTAINED IN THIS RELEASE. EMPLOYEE AGREES THAT HE WAS NOT PRESSURED OR COERCED IN ANY WAY TO SIGN THIS RELEASE. EMPLOYEE IS SIGNING THIS RELEASE KNOWINGLY AND VOLUNTARILY AND AFTER DUE CONSIDERATION, ENTERED INTO THIS RELEASE AND RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS SHE HAS OR MAY HAVE AGAINST EMPLOYER REGARDLESS OF THE DISCOVERY OF NEW FACTS. BY SIGNING THIS RELEASE, EMPLOYEE FURTHER REPRESENTS THAT, AFTER THE EFFECTIVE DATE, HE WILL HAVE RECEIVED ALL BENEFITS, RIGHTS, AND COMPENSATION TO WHICH SHE IS ENTITLED PURSUANT TO THE FAIR LABOR STANDARDS ACT THE NORTH CAROLINA WAGE AND HOUR ACT, AND FAMILY AND MEDICAL LEAVE ACT.

IN WITNESS WHEREOF, this Agreement is executed and delivered under seal this the 5TH day of MAY, 2022, effective as of the Effective Date.

**William Pitts**

Name: _/s/ William Pitts_

STATE OF NORTH CAROLINA

COUNTY OF WAKE

I certify that the following persons personally appeared before me this day and acknowledged to me that she and he voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: _Marian Peedin_.

Date: May 5th, 2022.

My Commission Expires: 09-12-2026

Notary Public

Print Name: Marian Peedin

Page **16** of **16**

EMPLOYEE HAS READ THIS ENTIRE RELEASE CAREFULLY. EMPLOYEE FULLY UNDERSTANDS THE FINAL AND BINDING EFFECT OF THIS RELEASE. EMPLOYEE AGREES THAT THIS RELEASE IS WRITTEN IN A MANNER CALCULATED TO BE UNDERSTOOD BY HER AND THAT IF SHE DOES NOT UNDERSTAND ANY PART OF THIS RELEASE, SHE HAS HAD A FULL OPPORTUNITY TO HAVE IT EXPLAINED TO HER BY AN ATTORNEY. THE ONLY PROMISES OR REPRESENTATIONS MADE TO EMPLOYEE ABOUT THIS RELEASE, OR TO INDUCE EMPLOYEE TO SIGN THIS RELEASE, ARE CONTAINED IN THIS RELEASE. EMPLOYEE AGREES THAT SHE WAS NOT PRESSURED OR COERCED IN ANY WAY TO SIGN THIS RELEASE. EMPLOYEE IS SIGNING THIS RELEASE KNOWINGLY AND VOLUNTARILY AND AFTER DUE CONSIDERATION, ENTERED INTO THIS RELEASE AND RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS SHE HAS OR MAY HAVE AGAINST EMPLOYER REGARDLESS OF THE DISCOVERY OF NEW FACTS. BY SIGNING THIS RELEASE, EMPLOYEE FURTHER REPRESENTS THAT, AFTER THE EFFECTIVE DATE, SHE WILL HAVE RECEIVED ALL BENEFITS, RIGHTS, AND COMPENSATION TO WHICH SHE IS ENTITLED PURSUANT TO THE FAIR LABOR STANDARDS ACT, THE NORTH CAROLINA WAGE AND HOUR ACT, AND FAMILY AND MEDICAL LEAVE ACT.

IN WITNESS WHEREOF, this Agreement is executed and delivered under seal this the 5th day of May, 2022, effective as of the Effective Date.

**Rachel Vradenburgh**

Name: _Rachel Vradenburgh_

STATE OF NORTH CAROLINA

COUNTY OF WAKE

I certify that the following persons personally appeared before me this day and acknowledged to me that she and he voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: _James A. Bolvard_.

Date: May 5, 2022.

My Commission Expires: _11-7-2025_

Notary Public

Print Name: _James A. Bolvard_

[Affix Notary Stamp or Seal]